**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TRUDY QUARTERMAN, | ) CASE NO. 4:23-CV-00503-PAG |
| ) | |
| Plaintiff, | ) JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. | ) |
| ) MAGISTRATE JUDGE | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| ) | |
| ) **REPORT AND RECOMMENDATION** | |
| Defendant, | ) |

**I. Introduction**

Plaintiff, Trudy Quarterman ("Quarterman" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On July 21, 2020, Claimant filed applications for DIB and SSI, alleging a disability onset date of April 5, 2017. (ECF No. 7, PageID #: 42). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 3, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On February 24,

1

2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 42-55). The ALJ's decision became final on February 9, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 27-30).

On March 13, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 11, 12). Claimant asserts the following assignments of error:

> (1) the ALJ did not address all of Plaintiff's medically determinable impairments; and
>
> (2) the ALJ's evaluation of the opinion of Plaintiff's therapist did not abide by the Commissioner's revised regulation for assessing medical opinion evidence.

(ECF No. 9 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified that she has difficulty climbing stairs in her house, and that she has fallen several times. She indicated that she drives only when absolutely necessary. Furthermore, she testified that her alleged onset date coincides with the date that she was diagnosed with neuropathy following a biopsy. She testified that she has tried to find work since her alleged onset date, but that people look at her as if she is crazy due to her anxiety. In addition, she testified that she has difficulty sitting for too long before her thighs begin to burn and bruise at the end of the day. The claimant stated that she is unable to stand for too long because her legs shake, and because her back causes pain. She indicated that she is unable to lift anything through bending over due to bilateral arthritis and carpal tunnel syndrome.
>
> The claimant reported that she is unable to get out of bed before 10 or 11 a.m. because her legs do not work in the morning, and that she then tries to do laundry or chores and tend to her children. She further testified that she falls at least 3-4 times per week, and that she is unable to hold a fork while eating. Moreover, she testified that she has difficulty showering, and sometimes goes days without showering. The claimant also testified that she takes medication and receives acupuncture treatment for her impairments. She indicated that she does not like seeing others, especially from her past, due to anxiety, and that she has panic

attacks.

(ECF No. 7, PageID #: 48).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

Prior to the alleged onset date, records reflect that the claimant was treated for various conditions including tendonitis in the right foot and ankle, possible neuropathic pain in the right foot and ankle, rhinitis, depression, seasonal allergies, and attention deficit hyperactivity disorder. Images of the right foot revealed various findings including mild arthritic changes and mild osteoarthritis of the talonavicular joint and midfoot (Ex. 1F, 11F). Additional images of the right foot demonstrated moderate degenerative changes of the second tarsometatarsal joint and first MTP joint (Ex. 3F).

As of the alleged onset date in April 2017, the claimant presented for peripheral neuropathy with symptoms including pain and tingling. On exam, she had paresthesia of the bilateral hands and bilateral feet, as well as in the left thigh. However, her bulk, contour, tone, and strength were normal. Her plantar reflexes were absent, but her brainstem reflexes were normal, her gait was normal, and Romberg sign was negative (Ex. 8F/93). During the same month, images of the lumbar spine revealed mild multilevel disc disease and degenerative changes, which were notes [sic] to be worse at the L3-4 level (Ex. 8F/87).

The claimant's neurological findings were unremarkable in May 2017 and July 2017 (Ex. 11F/67, 86). An examination in October 2017 was essentially normal, including that her motor strength was normal in the upper and lower extremities, and her sensory exam was intact (Ex. 11F/56).

The claimant presented for a recheck of peripheral neuropathy in January 2018, at which time she had paresthesia of the bilateral hands, legs, and toes, as well as the left foot. Yet, her bulk, contour, tone, and strength were normal. Although plantar reflexes were absent, but her brainstem reflexes were normal, and Romberg sign was negative (Ex. 8F/46). During the same month, the claimant presented with complaints of inattention, at which time a mental status exam revealed that her attention and memory were normal. Furthermore, her judgment and insight were good, her eye contact was normal, and her mood and affect were normal (Ex. 29F/7). The claimant was noted to be moderately depressed and mildly anxious in March 2018, but her behavior was cooperative, appropriate, and friendly. She was noted to be crying, but she made good eye contact, and her general motor activity was within normal limits. Her thought process was tangential and circumstantial (Ex. 29F/9).

In May 2018, the claimant reported various mental health symptoms including

restlessness, difficulty concentrating, irritability, sleep disturbance, depressed mood, diminished interest or pleasure, significant appetite or weight change, decreased motivation, and feelings of worthlessness and helplessness. On mental status exam, her mood was depressed with labile affect, and her insight was poor. She had partial judgment and impulse control, and she was hyperactive. However, she was oriented to person, place, time, and situation, and her appearance was clean. Furthermore, her eye contact was good, her concentration was fair, and her immediate, short-term, and long-term memory was intact (Ex. 2F/2-7).

In July 2018, the claimant complained of severe pain in her lower back and hips, at which time she had lower back pain across the lumbar area, but her sensory exam was intact, and her motor strength was normal in the upper and lower extremities (Ex. 11F/35). On exam in September 2018, the claimant's left elbow olecranon area was tender, but her motor strength was normal in the upper and lower extremities, and her sensory exam was intact (Ex. 11F/28). Treatment notes from October 2018 reflect that the claimant presented for a recheck of peripheral neuropathy, at which time she had paresthesia of the bilateral hands, legs, and toes, as well as the left foot. Her bulk, contour, tone, and strength were normal. Her plantar reflexes were absent, but her brainstem reflexes were normal, and Romberg sign was negative (Ex. 8F/29). An examination in November 2018 revealed that Lesgue's test was positive on the right at 40% (Ex. 5F/5).

The claimant presented with a chief complaint of low back pain and small fiber neuropathy since 2016 during an office visit in February 2019, at which time she had various abnormal findings including the bilateral QL and lumbar paraspinals were moderately hypertonic and tender, and the bilateral thor erectors/rhomboids were mildly hypertonic with guarding and tenderness. The claimant had nondermatomal hyperesthesia and hypoesthesia throughout the whole body. She also had decreased strength of the bilateral lower extremities, but she was able to heel walk, toe walk, and tandem walk. It was subsequently noted that she was a candidate for acupuncture (Ex. 4F/1-3). An examination in April 2019 revealed paresthesia of the bilateral hands, toes, and legs, as well as the left foot. Yet she had 5/5 muscle strength in all muscles, Romberg was negative, and she had no impairment of recent or remote memory. Furthermore, she had a normal attention span and ability to concentrate (Ex. 8F/21). In June 2019, it was noted that the claimant had not returned to therapy and was only making minimal gains. It was noted that she had not been compliant with her treatment plan and that she it did not seem that she wanted to continue with physical therapy (Ex. 4F/59). The claimant returned to physical therapy in September 2019, at which time she reported that physical therapy made her worse. She reported her whole leg and feet were aching and feeling tight and spastic (Ex. 4F/62).

Stiffness was noted on exam in October 2019 with active and passive range of motion of the pedal joints, and there was diffuse pain at palpation at the bottom of the arches bilaterally, as well as the dorsal lateral midfoot and ankle. She had positive parestheisas with percussion of the posterior tibial and deep peroneal

4

nerves, but her muscle strength appeared full without any deficits (Ex. 6F/9). An examination in December 2019 revealed abnormal findings including positive cervical compression test bilaterally, and Lesgue's test was positive on the right at 40% (Ex. 5F/2). During the same month, the claimant received functional orthotic devices (Ex. 6F/2).

The claimant made various complaints in February 2020 including back pain, right knee pain, neck pain, cervical pain, pain between the shoulder blades, and headaches. An examination revealed some abnormal findings including positive cervical compression test bilaterally, and Lesgue's test was positive on the right at 40% (Ex. 5F/3). In June 2020, the claimant's speech was normal, sharing conversation with normal laryngeal efforts. Appropriate mood and affect were seen on exam. Furthermore, thought processes were logical, relevant, and thoughts were completed normally. Her thought content was normal with no psychotic or suicidal thoughts, and her judgement was realistic with normal insight into her present condition. In addition, her mental status included: correct time, place, person orientation, normal recent and remote memory, normal attention span and concentration ability (Ex. 9F/5).

On exam in September 2020, the claimant's speech was normal, sharing conversation with normal laryngeal efforts. Appropriate mood and affect were seen on exam. Furthermore, thought processes were logical, relevant, and thoughts were completed normally. Her thought content was normal with no psychotic or suicidal thoughts, and her judgement was realistic with normal insight into her present condition. In addition, her mental status included: correct time, place, person orientation, normal recent and remote memory, normal attention span and concentration ability (Ex. 9F/2). On exam in December 2020, she had paresthesia of the bilateral hands, legs, and toes, as well as the left foot. Her bulk, contour, tone, and strength were normal. Her plantar reflexes were absent, but her brainstem reflexes were normal, her gait was normal, and Romberg sign was negative (Ex. 14F/5).

The claimant presented for a consultative examination with Magid Keramati, M.D., in February 2021, at which time she was noted to be alert, and she had good eye contact. Her mood was appropriate, and she had clear thought processes. Furthermore, her memory was normal, and her concentration was good. She had a slow, steady gait, her hand-eye coordination was good, and Romberg test was negative. She had no palpable muscle spasms, and her muscle bulk and tone were within normal limits. The claimant had diminished sensation in her right thumb, middle finger, and index finger, as well as paresthesias throughout the bilateral lower extremities. She had decreased range of motion of the cervical spine, but range of motion was otherwise unremarkable. Her reflexes were 2+ bilaterally, and there was no joint swelling, erythema, effusion, or deformity. She had generalized pain in her bilateral lower extremities, as well as cervical, thoracic, and lumbar spine tenderness. Dr. Keramati generally observed the claimant to be able to grasp and turn a doorknob, pick up and grasp a pen and write a sentence,

and lift and handle personal belongings. The claimant was unable to squat and rise from that position, but she was able to rise from a sitting position without assistance and had some difficulty getting up and down from the exam table. The claimant was able to walk on heels and toes with mild difficulty. Tandem walking was not achieved, and the claimant could stand but not hop on one foot bilaterally. In addition, Tinel sign was negative throughout, straight leg raising was negative, and her grip strength was 5/5 bilaterally (Ex. 16F).

Therapy notes from April 2021 reflect that the claimant was tearful and upset, which was related to the passing of a family member (Ex. 21F/17). Treatment notes from May 2021 reflect that the claimant reported left shoulder pain following a fall due to neuropathy. She had limited range of motion of the left shoulder secondary to pain, and she was very tender when palpating the left shoulder superiorly. She was noted to be awake, alert, and cooperative, and she was in no acute distress. Furthermore, her mood and affect were appropriate to situation. Images of the left shoulder were unremarkable (Ex. 20F/1-5). A mental status exam during the same month revealed that the claimant's mood was anxious, and she was noted to express panic and generalized anxiety. The claimant also reported fleeting suicidal ideations but denied any plan. Additionally, her appearance was unremarkable, her eye contact was fair, and she was oriented x4. The claimant's attention and thought were unremarkable, and her memory and judgment were intact (Ex. 31F/5). These mental status findings remained essentially unchanged in June 2021 (Ex. 31F/16).

In July 2021, the claimant reported that both arms and legs bilaterally were causing burning and numbing pins and needles pain from small fiber neuropathy, which she rated as a 9/10. She further reported that acupuncture decreased her pain for about two days and gave her the ability to function and do activities of daily living for at least 48 hours for grocery shopping and cleaning her house (Ex. 25F/17). During the same month, it was noted that an upper and lower extremity nerve study performed in February 2021 showed no evidence for large fiber neuropathy or cervical or lumbar radiculopathy bilaterally (Ex. 25F/23).

A mental status exam in August 2021 revealed that she was distractible with tangential speech. Her mood was anxious with generalized anxiety, but her eye contact was fair. Furthermore, her memory and judgment were intact, she was oriented x4, and her appearance as unremarkable (Ex. 31F/29). An examination in September 2021 revealed some abnormal findings including decreased range of motion of the spine, and pain with flexion and extension of the lumbosacral region. She was also noted to be moderately and mildly hypertonic and tender at various areas (Ex. 25F/34). These findings remained essentially unchanged in December 2021 (Ex. 25F/50). During a separate office visit in December 2021, the claimant's motor strength was normal in the upper and lower extremities, and her sensory exam was intact (Ex. 28F/2).

(ECF No. 7, PageID #: 49-52).

### C. Opinion Evidence at Issue

The ALJ's treatment of Tiffany DeHaven's medical opinion is at issue. DeHaven completed a "Mental Residual Functional Capacity Assessment" which indicated that Claimant suffered from marked limitations in several areas of mental functioning. (ECF No. 7, PageID #: 1392-93). DeHaven also provided a written explanation, noting that Claimant presented as "either having psychomotor agitation or psychomotor retardation, and restlessness" and "depressed most days, most of the time," with her depression worsening in April 2021 after her brother's death. (*Id.* at PageID#: 1394). Claimant had lost weight due to a lack of appetite and reported "both insomnia and hypersomnia, pain fatigue, and problems getting out of bed," as well as suicidal thoughts without a plan. (*Id.*) DeHaven indicated that "[a]ll of the mental health problems/symptoms have greatly impacted her ability to complete household tasks, have negatively impacted relationships, social interactions (client reported having no friends), and her ability to work." (*Id.*)

In addition to a "previous ADHD diagnosis," DeHaven noted that Claimant had been diagnosed with generalized anxiety disorder, post traumatic stress disorder ("PTSD"), and major depressive disorder. (*Id.* at PageID #: 1395). DeHaven reported that Claimant "has experienced multiple traumatic experiences since childhood including physical, sexual, mental abuse, and neglect as a child," and that her sister's death "brought back repressed memories of trauma from childhood that greatly impacted her functioning." (*Id.*). Claimant "reported anger outbursts (overreacting), irritability, verbal and physical aggression, lack of self care, hypervigilance, sleep disturbances and problems concentrating" and DeHaven opined that "[t]hese symptoms have been causing client extreme emotional distress that is obvious to therapist." (*Id.*).

7

IV. **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since April 5, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; peripheral neuropathy; lumbar radiculopathy; depressive disorder; anxiety disorder; attention deficit hyperactivity disorder; bilateral carpal tunnel syndrome; seasonal allergic rhinitis; osteoarthritis of the right foot; and small fiber neuropathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing; balancing occasionally; stooping, kneeling, crouching, and crawling occasionally; frequent handling and fingering; must avoid concentrated exposure to extreme cold, vibration, and irritants such as concentrated fumes, odors, dust, gases, or poor ventilation; must avoid all exposure to hazards such as heavy, dangerous machinery and unprotected heights; limited to simple, routine, and repetitive tasks, requiring only simple decisions, with no fast-paced production requirements such as assembly line work or piecemeal quotas; capable of adapting to changes in the work environment, meaning changes in work responsibilities or workplace, which are explained in advance of implementation and implemented gradually over time; occasional contact with coworkers, and supervisors; and no contact with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 45, 47, 53-55).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not,

9

whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal, arguing the ALJ's decision is not supported by substantial evidence because (1) the ALJ did not address all of Claimant's medically determinable impairments and (2) the ALJ's evaluation of the opinion of Plaintiff's therapist did not abide by the Commissioner's revised regulation for assessing medical opinion evidence. (ECF No. 9 at 1).

**1. The RFC is supported by substantial evidence regardless of the ALJ's failure to specifically reference Claimant's PTSD.**

Claimant argues she "is entitled to judicial relief because the ALJ's failure to even mention her PTSD resulted in an RFC finding that did not enjoy the support of substantial evidence." (ECF No. 9 at 14). She asserts that she "survived several traumas including physical, emotional, and sexual abuse as well as the sudden death or two siblings" and "received

consistent treatment for her PTSD in the form of cognitive behavioral therapy with her counselor Ms. DeHaven" but the ALJ's decision did not consider PTSD such that his RFC is not supported by substantial evidence. (*Id.* at 15). While Claimant recognizes that failure to identify an impairment as severe at Step Two is harmless if the ALJ proceeds beyond that step and "considers all of a claimant's impairments at every subsequent stage of the evaluation process" she asserts that the ALJ's failure to consider her PTSD "resulted in an RFC finding that was not an accurate reflection of her abilities" because "her PTSD symptoms would contribute to her being off-task at work or absent altogether from the workplace." (*Id.* at 15-16). She also argues that "failure to address Plaintiff's PTSD frustrates judicial review because only by undertaking de novo review of the medical evidence (guided by the post hoc rationalizations supplied by counsel) can it be determined whether additional limitations were proper." (*Id.* at 16).

The Commissioner responds that the Court should reject this argument because Claimant "does not cite PTSD-related symptoms overlooked by the ALJ." (ECF No. 11 at 6). The Commissioner argues that the ALJ found that Claimant had severe mental impairments; considered mental limitations in light of those impairments; and cited the record, including prior administrative medical findings which found "mental limitations largely consistent with the ALJ's RFC formulation" such that the RFC is supported by substantial evidence and Claimant fails to "demonstrate PTSD-specific symptoms/limitations that are inconsistent with her RFC." (*Id.* at 8-9).

Claimant replies that "the ALJ would have found the presence of greater limitations had all of Plaintiff's medically determinable impairments been considered as was required by law." (ECF No. 12 at 2). She argues that "the ALJ failed to apply the correct legal standard in this matter by not considering all her medically determinable impairments as was required by Social

11

Security Ruling 96-8p and apposite case law."[1] (*Id*. at 3).

"When formulating an RFC, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

Claimant is correct that the ALJ's decision does not reference her PTSD. However, while Claimant points to mentions of PTSD in the record, she fails to point to any limitations that resulted from her PTSD that were not accounted for by the ALJ's consideration of her other

---

[1] Claimant asserts in her reply that "failure to consider her PTSD was potentially case-determinative at Step Three of the Five-Step Sequential Evaluation." (ECF No. 12 at 3). However, in her initial briefing, Claimant only argued that the failure to consider her PTSD impacted whether the RFC was supported by substantial evidence. (*See* ECF No. 9). Thus, Claimant has waived any argument concerning whether she met a listing at Step Three. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); *see also Braun v. Comm'r of Soc. Sec.*, No. 1:20-CV-00374-JPC, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived."), *report & recommendation adopted*, 2022 WL 896669 (N.D. Ohio Mar. 28, 2022).

mental impairments. "SSR 96-8p explains that, '[i]n assessing [residual functional capacity], the adjudicator must consider *limitations and restrictions* imposed by all of an individual's impairments, even those that are not severe." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) (emphasis added). Claimant's counsel argued at the hearing that Claimant suffered from PTSD but, during her testimony, Claimant only described limitations she attributed to her anxiety and depression. (ECF No. 7, PageID #: 73, 83-85, 94-96). After considering the record, the ALJ formulated an RFC limiting Claimant to:

> simple, routine, and repetitive tasks, requiring only simple decisions, with no fast-paced production requirements such as assembly line work or piecemeal quotas; capable of adapting to changes in the work environment, meaning changes in work responsibilities or workplace, which are explained in advance of implementation and implemented gradually over time; occasional contact with coworkers, and supervisors; and no contact with the general public.

(ECF No. 7, PageID #: 47). In finding that greater limitations were not warranted, the ALJ relied on the opinions of the State agency psychological consultants and his own review of the record, including instances where Claimant's "attention and memory were normal," "her judgment and insight were good, her eye contact was normal, and her mood and affect were normal." (*Id.* at PageID #: 53; *see also id.* at PageID #: 463, 1487-88, 1491, 1493, 1512, 1523, 1531).

Because Claimant did not point to—and the Court has not found—any evidence in the record to support any additional limitations from her PTSD, there was nothing additional for the ALJ to consider in formulating the RFC. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"); *Helwagen v. Comm'r of Soc. Sec.*, No. 5:22-CV-01467, 2023 WL 3727253, at *17 (N.D. Ohio Apr. 20, 2023) (noting that where claimant "presented no arguments in support of how or why these non-severe impairments should have altered the ALJ's

RFC," substantial evidence supports the ALJ's determination that the impairments did not support a finding of disabled), *report & recommendation adopted*, 2023 WL 3726575 (N.D. Ohio May 30, 2023). Thus, substantial evidence supports the ALJ's decision and remand is not warranted.

### 2. The ALJ properly explained his treatment of DeHaven's opinion and his decision is supported by substantial evidence.

Claimant argues the ALJ's decision is not supported by substantial evidence based on his evaluation of the opinion of Claimant's treating therapist. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id*. Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id*. at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id*. at § 404.1520c(b)(2).

The ALJ considered DeHaven's opinion, which concluded that Claimant "has marked limitation in a majority of the areas of mental functioning." (ECF No. 7, PageID #: 52). The ALJ stated:

The undersigned finds this opinion to be unpersuasive, as it is not supported by

14

>> her accompanying report, which includes statements that the claimant presents in session as depressed most days, and that she displays feelings of sadness, hopelessness, and emptiness. Moreover, the opinion is inconsistent with the record as a whole, which do not reflect such severe limitations. For example, although mental status findings reflect some abnormalities with respect to her mood, affect, and attention at times, the claimant was also noted to be cooperative with good or fair eye contact. In addition, other mental status findings reflect that that her attention and memory were normal. Furthermore, her judgment and insight were good, her eye contact was normal, and her mood and affect were normal (Ex. 2F, 23F, 29F, and 31F).

(*Id.* at PageID #: 52-53).

Claimant argues she "is entitled to judicial relief because the ALJ's consideration of the required supportability and consistency factors . . . is not supported by substantial evidence." (ECF No. 9 at 16). Claimant argues that the ALJ's statement that DeHaven's accompanying report did not support her opinion "is too vague as the ALJ did not cite any specific information from Ms. DeHaven's very detailed two-page narrative report" and is also incorrect. (*Id.* at 20-21). Claimant also argues the ALJ's decision is not supported by substantial evidence because (1) while the ALJ found that DeHaven's opinion was "inconsistent with the record as a whole because [mental status examination] findings noted she was cooperative with good or fair eye contact," this is "not an inconsistency because Ms. DeHaven did not base her opinion on Plaintiff's inability to cooperate with mental health professionals or maintain eye contact;" and (2) while the ALJ "noted that Plaintiff displayed good judgment and insight and normal mood and affect," this was "incorrect" and not supported by the cited exhibits. (*Id.* at 22).

The Commissioner responds that the ALJ "articulated his consideration of the persuasiveness of Ms. DeHaven's medical opinion by discussing the extent to which the opinion was supported by objective evidence and explaining why it was not consistent with other evidence in the record; he was not required to do more." (ECF No. 11 at 9). The Commissioner asserts that Claimant "argues as though the ALJ overlooked symptoms like hyperactivity, rapid

speech, and lability when in fact they [sic] ALJ specifically mentioned medical reports of lability, tangentiality, and circumstantiality." (*Id.* at 10). Concerning consistency, the Commissioner argues that contrary to DeHaven's report, "mental status findings consistently showed that Plaintiff had normal memory;" a May 2021 report showed "normal attention and memory;" and "for the most part, [Claimant] had at least 'fair' attention and concentration." (*Id.* at 10-11). As to supportability, the Commissioner argues that the ALJ's finding is supported by substantial evidence regardless of its brevity because "DeHaven's supporting explanation cites symptoms, but does not provide specific objective evidence to support the marked limitations on the form." (*Id.* at 11). Further, the Commissioner argues that the ALJ relied on "other opinion evidence that he reasonably found better supported and more consistent with the record." (*Id.* at 12).

Claimant replies that "[t]he ALJ did not cite a lack of 'specific objective evidence' as a reason for finding Ms. DeHaven's opinion to be unpersuasive" but rather this is "the post hoc rationale of defense counsel." (ECF No. 12 at 3-4). Additionally, Claimant argues that DeHaven did cite objective evidence including, for example, psychomotor agitation or retardation and restlessness; indecisiveness; suicidal thoughts; and feelings of worthlessness, and "[t]his is as objective as it gets in mental health cases since psychology and psychiatry are, by definition, dependent on subjective presentations by the patient." (*Id.* at 4-5).

The Court agrees with the Commissioner that the ALJ adequately considered the supportability and consistency factors in rejecting DeHaven's opinion. Concerning supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medial opinions or

prior administrative medical finding(s) will be."). 20 C.F.R. § 404.1520c(c). The ALJ clearly considered supportability when he found that DeHaven's limitations were "not supported by her accompanying report, which includes statements that claimant presents in session as depressed most days, and that she displays feelings of sadness, hopelessness, and emptiness." (ECF No. 7, PageID #: 52). There is nothing in DeHaven's report explaining how these observations are relevant to her finding of marked limitations in understanding and memory; sustained concentration and persistence; and adaptation. (*Id.* at PageID #: 1392-95). Additionally, DeHaven's report includes her observation that Claimant "presents as either having psychomotor agitation or psychomotor retardation, and restlessness," but does nothing to explain why this observation is relevant to her opinion concerning Claimant's limitations in various areas of mental functioning. *Id.* Further, DeHaven does not cite any objective medical evidence to support her opinions. (*Id.*). Thus, the ALJ considered the supportability factor and substantial evidence supports his conclusion that DeHaven's opinion was not supported.

As to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c). Here, the ALJ found DeHaven's opinion "inconsistent with the record as a whole" because "although mental status findings reflect some abnormalities with respect to her mood, affect, and attention at times, the claimant was also noted to be cooperative with good or fair eye contact;" some mental status findings reflect that "her attention and memory were normal;" and "her judgment and insight were good, her eye contact was normal, and her mood and affect were normal." (ECF No. 7, PageID #: 52-53). The cited records include reports of unremarkable appearance, attention,

speech, and thought; fair eye contact; and intact memory and judgment. (*Id.* at PageID #: 1487-88, 1512, 1523, 1531, 1536, 1541, 1552). Additionally, the ALJ relied on the State agency psychological consultants' opinions that Claimant had only moderate limitations. (*Id.* at PageID #: 53). Contrary to Claimant's argument, these records support the ALJ's decision that DeHaven's opinion that Claimant suffered from marked limitations in most of the areas of mental functioning was inconsistent with the record as a whole. Thus, substantial evidence supports the ALJ's treatment of DeHaven's opinion and the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

Because the ALJ properly considered the supportability and consistency factors in finding DeHaven's opinion unpersuasive and because substantial evidence supports that decision, the ALJ did not err.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: December 21, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).